**JOHN L. BURRIS, Esq., SBN 69888**
**ADANTE D. POINTER, Esq. SBN 236229**
**PATRICK BUELNA, Esq. SBN 317043**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone:     (510) 839-5200
Facsimile:      (510) 839-3882
Email:  John.Burris@johnburrislaw.com
Email:  Adante.Pointer@johnburrislaw.com
Email:  Patrick.Buelna@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JAIME, an individual; GABRIELA COVARRUBIAS, individually and as co-successor-in-interest to Decedent CHRISTIAN MADRIGAL, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA, a municipal corporation; CRAIG CEDERGREN, in his individual as a law enforcement officer for the Alameda County Sheriff's Department; JOSE MADRIGAL, as co-successor-in-interest to Decedent CHRISTIAN MADRIGAL; and DOES 1-50, inclusive. <br><br> Defendants. | Case No.: <br><br> COMPLAINT FOR DAMAGES (42 U.S.C §1983) <br><br> JURY TRIAL DEMANDED |

## INTRODUCTION

1.     This case arises out of the death of Christian Madrigal, a twenty-old man who suffered fatal injuries while he was in the care and custody of the Alameda County Sheriff's Department at Santa Rita Jail ("SRJ").

2.     On June 10, 2019, Fremont Police Officers arrested and briefly housed Christian at Fremont City Jail on charges that he was allegedly under the influence. While at Fremont City Jail, officers decided to take Christian to SRJ to complete his booking process. Once Christian arrived at SRJ, Fremont Police Officers and Alameda County Sherriff's Deputies discussed Christian's mental health status. Fremont Police and SRJ Deputies agreed that Christian would only stay at SRJ long enough to complete the booking process which was estimated to take no longer than just a few hours.  It was further agreed Christian would be released from custody after being booked, fingerprinted and photographed.

3.     Later that same day, Christian's parents came to Santa Rita to check on their son. They told SRJ Staff that Christian was in the midst of a mental health crisis and had recently been treated and released from a mental health hospital. The parents begged SRJ Staff to get Christian the medical attention he so clearly needed and deserved. SRJ Staff reassured the parents that Christian's needs would be met and that he would be released shortly.  They instructed the parents to return home and wait for Christian to call.

4.     Unbeknownst to Christian's parents, their son's time at SRJ had taken a turn for the worse as his mental crisis had rendered him unable to comply with simple commands. In response, SRJ Deputies became frustrated with Christian and they placed him in an isolation cell. Alameda County Sheriff's LT. CEDERGREN then ordered Deputies to chain Christian to the cell door. The lower-ranking Deputies reminded LT. CEDERGREN that chaining a mentally-ill person to a cell door violated SRJ Departmental policy. Nevertheless, LT. CEDERGREN told Deputies to disregard the policy. Deputies relented and followed the Lieutenant's orders by chaining Christian to the door, thus leaving the young man unmonitored and chained to the door while in the midst of a mental health crisis.

5.     A short time later, SRJ Staff called Christian's parents and told them that

something had happened to their son while he was in jail and that he had been transported to Eden Hospital for medical treatment. The parents rushed to Eden. When they arrived they discovered their son was on life support after having suffered injuries from supposedly trying to commit suicide by wrapping the chains the Deputies used to restrain him to the cell door around his neck. The parents also learned their son had apparently been beaten while he was at SRJ, as doctors noted Christian had bruises all over his body and had suffered a bruised lung as well as a lacerated spleen and liver. And tragically several days later, Christian succumbed to his injuries.

6.    To date, the Alameda County Sherriff's Department refuses to tell Christian's family what happened to their loved one while he was in their care and custody. In fact, the Sheriff's Department continues to stonewall requests for the release of Christian's SRJ custody records, the Deputies body-worn camera footage of the incident, and the autopsy reports, cruelly leaving the family to grope in the dark for answers as to how the young man met his death.

## JURISDICTION

7.    This action arises under Title 42 of the United States Code §1983. The unlawful acts and practices alleged herein occurred in the Dublin, California, which is within this judicial district. Title 28 United State Code §1391(b) confers venue upon this Court.

## PARTIES

8.    Plaintiff JOSE JAIME is a competent adult. Plaintiff JOSE JAIME sues in his individual capacity. Plaintiff JOSE JAIME is the stepfather of Decedent CHRISTIAN MADRIGAL, was Christian's primary caretaker and raised Decedent.

9.    Plaintiff GABRIELLA COVARRUBIAS is a competent adult and sues in both her individual capacity and as a co-successor-in-interest to Decedent CHRISTIAN MADRIGAL. Plaintiff COVARRUBIAS is the biological mother of Decedent and raised him. Plaintiff

COVARRUBIAS brings these claims individually and on behalf of Decedent CHRISTIAN MADRIGAL pursuant to California Code of Civil Procedure §§377.20 et seq. and 377.60 *et seq.* which provide for survival and wrongful death actions.  Both the wrongful death and survival claims survive the death of CHRISTIAN MADRIGAL; both arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure §377.62.  Plaintiff also brings her claims on the basis of 42 USC §§1983 and 1988, the United States Constitution, and federal civil rights law.  Plaintiff also brings these claims as Private Attorney General, to vindicate not only her rights, but others' civil rights of great importance.

10.   NOMINAL DEFENDANT JOSE MADRIGAL is a competent adult and is a co-successor-in-interest to Decedent CHRISTIAN MADRIGAL. Defendant MADRIGAL is the biological father of Decedent CHRISTIAN MADRIGAL. Defendant JOSE MADRIGAL is named as a nominal defendant because he is an indispensable party due to his rights to bring forth claims on behalf of Decedent CHRISTIAN MADRIGAL pursuant to California Code of Civil Procedure §§377.20 *et seq.* and 377.60 *et seq.* which provide for survival and wrongful death actions.  Both the wrongful death and survival claims survive the death of CHRISTIAN MADRIGAL; both arise from the same wrongful act or neglect of another; and such claims are properly joined pursuant to California Code of Civil Procedure §377.62.  Nominal Defendant JOSE MADRIGAL also has right to claims on the basis of 42 USC §§1983 and 1988, the United States Constitution, and federal civil rights law.  Nominal Defendant Jose Madrigal lives outside the United States of America and currently resides in Mexico. Plaintiffs are in contact with Jose Madrigal who has expressed no interest in pursuing his legal claims on his own or his son's

behalf. Nevertheless, Plaintiffs will serve and name nominal Defendant Jose Madrigal with this Complaint in order to give him fair notice and opportunity to execute his claims.

11.   Defendant CRAIG CEDERGREN ("CEDERGREN") at all material times was employed as a law enforcement officer by Defendant COUNTY OF ALAMEDA, and was acting within the course and scope of that employment.  Defendant CEDERGREN was acting as a high-ranking supervisor at the time of the incident.

12.   Defendant ALAMEDA COUNTY ("Defendant County") is and at all times herein mentioned a municipal entity duly organized and existing under the laws of the State of California that manages and operates the COUNTY OF ALAMEDA SHERIFF'S DEPARTMENT and SANTA RITA JAIL.

13.   Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue said defendants by such fictitious names.  Plaintiffs will amend this complaint to allege the true names and capacities when ascertained.  Plaintiffs believe and allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth.  Each defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and false arrests.  Each defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission.  Plaintiffs will ask leave to amend this complaint subject to further discovery.

14.   In doing the acts alleged herein, Defendants and each of them, acted within the course and scope of their employment for ALAMEDA COUNTY.

15.   In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

16.   Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

17.   Plaintiffs filed a government tort claim on September 9, 2019, which was rejected by operation of law.

## STATEMENT OF FACTS

18.   On or about June 10, 2019, twenty-year-old Decedent Christian Madrigal was suffering a medical crisis after recently having being released from a psychiatric hospital. Christian's family called Fremont Police Department to have Christian re-admitted into the psychiatric hospital due to his ongoing medical and mental health crisis.

19.   Fremont police arrived at the Madrigal residence where Christian's stepfather, Plaintiff Jose Jaime, once again informed the officers Christian had been acting strange after having ingested psychedelic mushrooms a few days beforehand.[1] Mr. Jaime insisted that the Fremont police officers transport Christian back to the hospital for further psychiatric treatment, but the officers refused, alleging he did not meet the criteria for a mental health detention. Instead, Fremont officers decided to arrest Christian on the basis of allegedly being under the influence of an illicit drug.

---

[1] Mr. Jaime had called and met with the same Fremont Police Officers the prior evening when he initially requested their assistance with a mental health hold.

20.   Fremont officers took Christian into custody and transported him to Fremont City Jail. At Fremont City Jail, Christian had a difficult time following Fremont Jail Staff's orders as Christian would persistently refuse to stand still and try to walk away from jailors. There was a short, minor altercation between Fremont officers and Christian during the booking process.

21.   Ultimately, Fremont officers decided it would be best to transport Christian to Santa Rita Jail to complete the booking process for the charge of being under the influence of a narcotic. To that end, Fremont officers placed Christian into a WRAP device and drove him to SRJ where they transferred his care and custody to Santa Rita Jail Staff and Alameda County Sheriff's Deputies.  Prior to accepting custody, medical staff did a full evaluation of Christian and determined that he was uninjured and was of good health when they accepted custody. Fremont officers informed Deputies that Christian was suffering a mental health crisis and could possibly be under the influence of a narcotic that would affect his ability to interact and follow instructions. Fremont officers also informed Deputies that Christian had been recently released from a psychiatric hospital. At the time that Deputies accepted custody of Christian, he remained a pre-arraignment detainee as he had not been convicted of any crime. Fremont Police and Alameda County Sheriff's Deputies agreed Christian would only be held at SRJ for a short time in order for Christian to complete the booking process and thereafter he was to be released.

22.   Later that same day, Christian's parents drove to Santa Rita Jail to check on the status of their son. At SRJ, they met with SRJ Staff and told them that Christian had recently been released from a mental health hospital and that he was still going through a mental health crisis. SRJ Staff advised the worried couple that Christian was doing well and would be released soon.

23.   Deputies placed Christian Madrigal in a cell to wait for the booking process to begin. At some point during that process, Christian began to passively resist SRJ Deputies by not complying with their orders. In response, Deputies decided to discipline Christian by placing him into an isolation cell.

24.   Inexplicably, Alameda County Sheriff's LT. Craig CEDERGREN ordered his subordinate Deputies to chain Christian to the door of the cell. The yet-to-be-identified Deputies protested and informed Defendant CEDERGREN that it would violate Alameda County Sheriff's Department policy to chain the mentally-ill young man to the door. In direct contradiction to SRJ Departmental policies and in reckless disregard for the safety and rights of Christian, Defendant CEDERGREN ordered his Deputies to chain Christian to the cell door.

25.   The Deputies relented and chained Christian to the door. The involved Deputies failed to report, intervene or disobey the Lieutenant's orders even though they knew the dangers and risks associated with chaining a mentally-ill person to the door. Moreover, the Deputies left Christian unsupervised despite knowing Christian was in the midst of a mental health crisis.

26.   A short time later, Santa Rita Jail contacted Christian's parents and told them something happened to Christian and that he was being transported to Eden Hospital for emergency medical care. When the parents arrived, Christian was unresponsive and covered in bruises from head to toe. Medical staff informed the devastated couple that Deputies told them Christian had tried to commit suicide by wrapping a sheet around his neck. However, the parents noticed Christian had bruising and markings around his neck that were consistent with a chain being tightly placed around it. Although Deputies claimed they did not use any force against Christian, the  Eden Hospital's medical staff diagnosed Christian as suffering from a bruised

lung along with a lacerated spleen and liver; injuries which are consistent with him having sustained blunt force trauma and/or a severe beating.

27.   Christian never regained consciousness and remained on life support for several days until he ultimately succumbed to his fatal injuries.

28.   In the aftermath, Christian's death has left his grieving family with more questions than answers as Alameda County Sheriff's Department has to date refused to release any incident reports, body-worn camera footage of the incident, witness statements, Christian's custody records or his autopsy report. Instead, the Department has chosen to stonewall and hide the true facts surrounding Christian's untimely and unnecessary death. Conversely, the City of Fremont chose to be transparent with Christian's family and provided its incident reports and allowed the family to see video footage capturing the time Christian was in their care and custody. The family can only wish Alameda County took a similar approach and was hence forced to file this instant lawsuit to find out how Christian met his premature death and to hold those responsible accountable.

29.   Santa Rita Jail Staff ignored the pleas of Christian's parents to get their son medical help and instead physically abused Christian and then chained him to the door in violation of Departmental policy.  The involved Deputies then permitted the suicidal young man to be left alone while having access to the means by which he could attempt to carry out his suicidal ideations. Foreseeably, it appears he may have done just that.

30.   Incredulously, Plaintiffs do not believe Defendant CEDERGREN and the other involved but yet-to-be identified Deputies were ever disciplined and/or retrained as a result of their unconstitutional conduct.

## MONELL ALLEGATIONS

31.   Defendant County Alameda has a policy within Santa Rita Jail to place pre-arrignment, pretrial detainees suffering mental health disorders in solitary confinement cells for extended periods of time that are rarely if ever washed, are caked with feces, drenched in urine, contain no sink, no toilet, and contain only a hole for inmates to defecate and urinate.

32.   Defendant County Alameda also has a policy to deny pre-arraignment, pretrial detainees suffering mental health disorders access to psychiatric treatment and medicine despite being notified their conditions require this necessary medical treatment to prevent the inmates' risk of suicide and to prevent their mental health condition from worsening and causing new and irrecoverable damage to their psyches. Defendant County does not even provide minimal access to psychiatric treatment by failing to using trained professionals to substantively evaluate pre-trial detainees for mental health disorders and/or securing them medications.

33.   Defendant County Alameda has a policy of using isolation cells as a form of punishment for mentally-ill as well as other inmates. Disciplinary Isolation is defined in Defendants' policies as "punitive segregation from the general jail population and restricted privileges for an inmate who has committed a serious rule violation." Such "serious rule violations" include being generally disrespectful, excessive whistling or other noise, possessing unauthorized clothing, reporting to a program late, failing to cooperate with work or education programs, possessing more than 15 vending machine tokens, or failing to return a tray after meal time. Individuals in Disciplinary Isolation are permitted to leave their cells for up to one hour a day, five days a week. There is no cap on the use of Disciplinary Isolation and prisoners may be held in Disciplinary Isolation for more than 30 days, even for a single rule violation, when authorized by the Commanding Officer at the Jails.

34.   Alameda County's use of these isolation cells has had tragic consequences and, over the last five years, at least thirty-three individuals incarcerated in the Alameda County Jails have died, including thirteen individuals who committed suicide, along with many more unsuccessful attempts. These deaths are not isolated tragedies but rather are indicative of the harsh and unconstitutional conditions in the Santa Rita Jail.

35.   By Jail policy, prisoners can be confined for up to 72 hours in these cells. Yet it is customary for prisoners to be forced to stay in such cells for a week or more at a time. Conditions are so bad, prisoners have stopped reporting suicidal feelings to Staff in order to avoid being thrown into isolation cells.

36.   For example, in 2016, Alameda County Sheriff's Deputies Sarah Krause and Stephen Sarcos were charged and arrested for weaponizing feces and urine to punish a mentally ill inmate.

37.   In 2018, eight inmates filed a suit against Alameda County for unconstitutional use of isolation cells on mentally-ill persons, the isolation cells being caked in feces and urine with no furniture or toilet, and denial of even minimal access to psychiatric treatment and medication. And in 2017, a pre-arraignment detainee, Abraam Sweiha sued Santa Rita: Sweiha was suffering from bipolar disorder and taken to Santa Rita Jail, where Deputies refused to provide him psychiatric medication or treatment. Deputies stripped him naked and placed him in an isolation cell that was caked in urine, feces, had no toilet, no sink and no bed. Deputies kept him there past the 72-hour policy, while Sweiha's mental health condition worsened and was left unmonitored until he attempted suicide. In response, Deputies placed him in a strait jacket and kept there a week before finally releasing him to the psychiatric hospital, and after his mental health suffered irreversible damage.

38.   With full knowledge of the aforementioned unconstitutional policies and conduct, yet-to-be-identified Deputies and supervisor Defendant CEDERGREN, decided to punish Christian Madrigal for being mentally ill and went on to place Decedent Christian Madrigal in an isolation cell with feces and urine, no furniture, deny him access to psychiatric evaluation and treatment, refuse to monitor him, chain him to a door and then permitted him to use those very chains to reportedly commit suicide.

## **DAMAGES**

39.   As a proximate result of Defendant CEDERGREN and the yet-to-be-identified Does' conduct, Decedent suffered assault, battery, excessive force, and wrongful death.  As a further proximate result of Defendant and Does' conduct, Decedent and Plaintiffs suffered extreme physical injury, emotional distress, fear, terror, anxiety, humiliation, and loss of sense of security, dignity, and pride. Plaintiffs also suffered loss of companionship, comfort and relationship. Decedent suffered loss of his life and enjoyment of his life. Finally, Plaintiffs sustained the following injuries and damages, past and future, among others:

a.    Wrongful death of Christian Madrigal (by Plaintiff Covarrubias);

b.    Hospital and medical expenses (by Plaintiff Covarrubias);

c.    Coroner's fees, funeral and burial expenses (by Plaintiff Covarrubias);

d.    Loss of familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support (wrongful death by Plaintiff Covarrubias) and loss of familial association (by all Plaintiffs);

e.    Pain and Suffering, including emotional distress (by all Plaintiffs, based on individual §1983 claim for loss of familial association);

f.    Christian Madrigal's loss of life, pursuant to federal civil rights law (by Plaintiff Covarrubias); and

g.    Christian Madrigal's conscious pain and suffering, pursuant to federal civil rights law (Survival claims);

h.    Violation of constitutional rights; and

i.    All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§1983, 1988; California Civil Code §§52, 52.1, California Code of Civil Procedure §1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

40.   The conduct of Defendant CEDERGREN and Does 1-50 were malicious, wanton, and oppressive.  Plaintiffs are therefore entitled to and award of punitive damages against said Defendant and Does.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Fourth Amendment – Excessive Force under 42 U.S.C. §1983)
*(Plaintiff Covarrubias as successor-in-interest against CEDERGREN and DOES 1-25)*

41.   Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint.

42.   When Defendants and Does punched, kicked and beat Decedent until he suffered internal injuries, Decedent was not a credible threat, unarmed and outnumbered. Defendants' conduct deprived Decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Decedent under the Fourth Amendment to the United States Constitution.

43.   As a result of this misconduct, Defendant CEDERGREN and yet-to-be-identified Deputies are liable for Decedent's injuries.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
### (Municipal Liability for Unconstitutional Custom or Policy (Monell)–42 U.S.C. Section 1983)
*(Plaintiffs against Defendant ALAMEDA COUNTY and DOES 26-50)*

44.   Plaintiffs hereby re-allege and incorporate by reference each and every paragraph of this Complaint.

45.     Plaintiffs are informed and believe and thereon allege that high ranking ALAMEDA COUNTY officials, including Defendant CEDERGREN, and DOES 26-50, and/or each of them, knew and/or reasonably should have known about acts of misconduct by Defendants, and DOES 1-25, and/or each of them.

46.     Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants, and DOES 25-50, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers.

47.     Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendants, and DOES 1-50, and/or each of them, encouraged these officers to continue their course of misconduct, resulting in the violation of Plaintiffs' rights as alleged herein.

48.     As against Defendant ALAMEDA COUNTY, Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY, Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of the COUNTY OF ALAMEDA SHERIFF DEPARTMENT tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens.

49.     Plaintiffs are informed and believe and thereon allege that the acts and omissions alleged herein are the direct and proximate result of the deliberate indifference of Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY, and each of them, to repeated acts of misconduct, which were tacitly authorized, encouraged or condoned by the Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY, and each of them.

50.     The injuries and damages to Plaintiffs as alleged herein were the foreseeable and proximate result of said customs, policies, patterns and/or practices of Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY, and each of

them.

51.   Plaintiffs are informed and believe and thereon allege that the damages sustained as alleged herein were the direct and proximate result of municipal customs and/or policies of deliberate indifference in the training, supervision and/or discipline of members of the Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY.

52.   Plaintiffs are informed and believe and thereon allege that Plaintiffs' damages and injuries were caused by customs, policies, patterns or practices of Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY, and each of them, of deliberate indifference in the training, supervision and/or discipline of Defendants, and DOES 1-50, and/or each of them.

53.   The aforementioned customs, policies or practices of Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY, and each of them, resulted in the deprivation of Plaintiffs' constitutional rights.

54.   The aforementioned acts and/or omissions and/or deliberate indifference by high ranking ALAMEDA COUNTY officials, including high ranking ALAMEDA SHERIFF DEPARTMENT supervisors, Defendants, and DOES 1-50, and each of them, and the aforementioned customs, policies or practices of Defendants and/or DOES 1-50 in his/their capacity as police officer(s) for ALAMEDA COUNTY resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

      a.   The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution;

      b.   The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution;

      c.   The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution.

      d.   The right to reasonably safe conditions as guaranteed by the Fourteenth Amendment to the United States Constitution.

e.   The right of pre-arraignment detainees to be free from punishment.

55.   Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(Violation of the Fourteenth Amendment)**
*(Plaintiffs against CEDERGREN and DOES 1-25)*

56.   Plaintiffs re-allege and incorporate by reference each and every paragraph of this Complaint.

57.   By the actions and omissions described above, Defendants violated 42 U.S.C. §1983, depriving Plaintiffs of the following clearly established and well-settled constitutional rights protected by the Fourteenth Amendments to the United States Constitution including:

a.   The right to be free from deliberate indifference to Decedent's serious medical needs while in custody as secured by the Fourteenth Amendment.

b.   An individual's constitutional right to a safe environment and/or conditions.

c.   A pre-arraignment detainee right to be free from conditions and restrictions that amount to punishment.

d.   Right to be free from excessive force as a pre-arraignment detainee.

e.   Right to familial association.

58.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent and Plaintiffs of rights described herein with reckless disregard for whether the rights and safety of Plaintiffs and others would be violated by their acts and/or omissions. Defendants used excessive force, deprived Plaintiffs of their familial relationship as Decedent was in obvious need of medical treatment when Defendants mercilessly beat Decedent causing severe visible injuries and serious internal injuries, but received no medical evaluation. Furthermore, due to his

mental health condition coupled with the severe trauma Deputies caused, followed by chaining him to a door, Decedent was at high risk for suicide yet Deputies abandoned him and did not monitor him.

59.   Defendants violated Decedent's right to reasonably safe conditions and confinement, and right to be free from restrictions that amount to punishment: Deputies placed Decedent in an isolation cell caked with feces and urine, no furniture, sink or toilet and chained him to a door for merely being uncooperative and mentally ill before probable cause had been established that he had committed any criminal wrongdoing at an arraignment.

60.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages as set forth herein.

61.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. §1983.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
**(Violation of the Bane Act (Cal. Civ. Code §52.1))**
*(Plaintiffs against all Defendants)*

62.   Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as if fully set forth here.

63.   Plaintiffs bring this "Bane Act" claim individually for direct violation of their own rights (familial association claim based on Defendants' brutal and intentional beating and violation of law enforcement procedures without a legitimate law enforcement purpose in a manner that shocks the conscience), and Plaintiffs Covarrubias and Madrigal bring this Bane Act claim as a survival claim pursuant to California Code of Civil Procedure §377.20 *et seq.* for violation of Christian Madrigal's rights.

64.     By their conduct described herein, Defendant CEDERGREN and Does 1-50, acting in concert/conspiracy, as described above, violated Plaintiffs' and Decedent's rights under California Civil Code §52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

a.     Christian Madrigal's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and by Article I, §13 of the California Constitution;

b.     Christian Madrigal's right to be free from excessive and unreasonable force while in custody, as secured by the Fourth and Fourteenth Amendment to the United States Constitution and by Article 1, §13 of the California Constitution;

c.     Christian Madrigal's right to be free from unreasonable confinement while in custody, as secured by the Fourteenth Amendment to the United States Constitution and by Article 1, §13 of the California Constitution;

d.     Christian Madrigal's right to be free from punishment while in custody as a pre-arraignment detainee, as secured by the Fourteenth Amendment to the United States Constitution and by Article 1, §13 of the California Constitution;

e.     Christian Madrigal's right to medical care as secured by the Fourteenth Amendment to the United States Constitution and by Article 1, §13 of the California Constitution; and

f.     All Plaintiffs' right to be free from wrongful government interference with familial relationships, and Plaintiffs' and Decedent's right to companionship and society with each other, as secured by the First and Fourteenth Amendments to the United States Constitution.

65.     Defendants used unlawful, excessive and deadly force which violates the Fourth Amendment and violates the Bane Act.[2]  Defendants' use of unlawful deadly force against Christian, in and of itself, satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act.

---

[2] *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th Cir. May 19, 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013)).

66.     Further, any volitional violation of rights done with reckless disregard for those rights also satisfies the "by threat, intimidation, or coercion" requirement of the Bane Act. All of Defendants' violations of duties and rights were volitional, intentional acts, done with reckless disregard for Plaintiffs' and Decedent's rights; none was accidental or merely negligent.

67.     Alternatively, Defendants violated Plaintiffs' and Decedent's rights by the following conduct constituting threat, intimidation, or coercion that was above and beyond any lawful seizure or use of force:

a.     Threatening Christian Madrigal in the absence of any threat presented by Christian Madrigal, or any justification whatsoever;

b.     Defendants beating an unarmed and outnumbered Christian Madrigal in the absence of any threat or need for such force;

c.     Threatening violence against Christian Madrigal, with the apparent ability to carry out such threats, in violation of Civ. Code §52.1(j);

d.     Failing to intervene to stop, prevent, or report the unlawful seizure and use of excessive and unreasonable force by other officers;

e.     Violating multiple rights of Decedent and Plaintiffs; and

f.     Violating all Plaintiffs' rights to familial association by their use of conscience-shocking excessive force and provocative tactics without any legitimate law enforcement purpose.

68.     Defendant County of Alameda is vicariously liable, pursuant to California Government Code §815.2, for the violation of rights by its employees and agents.

69.     As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiffs' and Decedent's rights under the United States and California Constitutions, Plaintiffs (individually and/or as Successors in Interest) sustained injuries and damages, and against all Defendants and is entitled to relief as set forth above including punitive damages against Defendant CEDERGREN and Does 1-50, and including all damages allowed by

California Civil Code §§52, 52.1, and California law, not limited to costs, attorneys' fees, treble damages, and civil penalties.

## SIXTH CAUSE OF ACTION
### (Battery – Violation of California Penal Code §242)
*(Plaintiff Covarrubias against Defendant CEDERGREN and DOES 1-25)*

70.  Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as if fully set forth here.

71.  DOES, while working as law enforcement officers for the COUNTY OF ALAMEDA, and acting within the course and scope of their duties, intentionally struck Decedent without a lawful basis.

72.  As a result of the actions of the DOES, Decedent suffered physical injuries. The Does did not have legal justification for using force against Decedent, and the DOES' use of force while carrying out their law enforcement officer duties was an unreasonable use of force.

73.  As a direct and proximate result of Defendants' assault and battery of Christian Madrigal, Decedent sustained injuries and damages, and are entitled to relief as set forth above.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Negligence – Wrongful Death & Survival Action)
*(Plaintiffs Covarrubias against Defendant CEDERGREN and DOES 1-25)*

74.  Plaintiffs hereby re-allege and incorporate each and every paragraph in this Complaint as if fully set forth here.

75.  At all times, Defendants CEDERGREN and DOES 1-50 owed Plaintiffs and Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

76.  At all times, Defendants CEDERGREN and DOES 1-50 owed Plaintiffs and Decedent the duty to act with reasonable care.

77.   These general duties of reasonable care and due care owed to Plaintiffs by Defendants include but are not limited to the following specific obligations:

a.   to refrain from using excessive and/or unreasonable force against Christian Madrigal;

b.   to refrain from unreasonably creating the situation where force, including but not limited to deadly force, is used;

c.   to refrain from abusing their authority granted them by law; and

d.   to refrain from violating Plaintiffs' and Decedent's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

78.   Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and Decedent.

79.   Defendant County of Alameda is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal. Gov. Code §815.2.

80.   As a direct and proximate result of Defendants' negligence, Decedent and Plaintiffs sustained injuries and damages and, against each and every Defendant, is entitled to relief as set forth above.

## JURY DEMAND

81.   Plaintiffs hereby demand a jury trial in this action.

## PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1.   For general damages in a sum to be proven at trial;

2.   For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

3.   For punitive damages against Defendant CEDERGREN and DOES 1-50 in a sum according to proof;

4.   Declaratory and injunctive relief, including but not limited to the following:

    i.   An order requiring Defendant ALAMEDA COUNTY to institute and enforce appropriate and lawful policies and procedures for taking people suffering from mental health issues into custody

    ii.   An order requiring Defendant ALAMEDA COUNTY to institute and enforce appropriate and lawful policies and procedures for providing medical and psychiatric assistance to arrestees/detainees;

    iii.   An order requiring Defendant ALAMEDA COUNTY to prohibit the County from using isolation cells as punitive measures against the mentally-ill and/or pre-arraignment detainees;

    iv.   An order prohibiting Defendant ALAMEDA COUNTY from engaging in the unconstitutional customs, policies, practices, procedures, training and supervision as may be determined and/or adjudged by this case;

    v.   An order requiring Defendant ALAMEDA COUNTY train all law enforcement officers concerning generally accepted and proper tactics and procedures and this Court's orders concerning the issues raised in injunctive relief requests i-iv, above.

5.   All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§1983 and 1988, Cal. Code of Civ. Proc. §§377.20 *et seq.*, 377.60 *et seq.*, 1021.5, Cal. Civil Code §§52 *et seq.*, 52.1, and as otherwise may be allowed by California and/or federal law;

6.   For cost of suit herein incurred; and

7.   For such other and further relief as the Court deems just and proper.+

Dated: December 23, 2019                    **LAW OFFICES OF JOHN L. BURRIS**


                                                     _/s/  Adante D. Pointer_
                                            ADANTE D. POINTER
                                            PATRICK BUELNA
                                            JOHN L. BURRIS
                                            Attorney for Plaintiffs