**JOHN L. BURRIS, ESQ., SBN 69888**
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, CA 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
Email: John.Burris@johnburrislaw.com

**ADANTÉ D. POINTER, Esq. SBN 236229**
**PATRICK BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
Wells Fargo Center
1901 Harrison St., Suite 1140,
Oakland, CA 94612
Tel: 510-929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE JAIME, et al.,<br><br>　　　　Plaintiffs,<br>v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>　　　　Defendants. | CASE NO.: 3:19-cv-08367-RS<br><br>NOTICE OF AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT TO NAME DEPUTY CHAD LEWIS<br><br>HON. RICHARD SEEBORG<br><br>Date:　　October 22, 2020<br>Time:　　1:30 p.m.<br>Ctrm:　　3, 17th Floor |

ii

## NOTICE OF MOTION FILING

**PLEASE TAKE NOTICE** that on October 22, 2020 at 1:30 p.m., or as soon as this matter may be heard in front of the Honorable Richard Seeborg, in the United State District Court, Northern Division, Robert E. Coyle United States Courthouse 450 Golden Gate Ave, San Francisco, CA 94102, Plaintiffs will move for leave to file an amended complaint to name Deputy Salazar, Deputy Ross, Deputy Johnson, Deputy McMann, Deputy Rhoades, Deputy Sides, Sgt. Graham, Deputy Torres, Deputy Comfort, Lt. McComas, Deputy Ross as Defendants.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

## I. INTRODUCTION

Plaintiffs respectfully move this Court for leave to file a First Amended Complaint to name County employees as Defendants. After Plaintiffs granted several discovery extensions to Defendants, made repeated efforts to meet and confer and drafted several discovery dispute letters, Defendants disclosed the body-worn cameras, video surveillance camera footage and policies and trainings required to evaluate the liability of the County employees after the Court's deadline for amended pleadings.

When Plaintiffs requested a stipulation for leave due to courteously granting extensions, multiple meet and confer efforts and Defendants producing documents after the pleading deadline, Defendants turned around and refused asserting Plaintiffs should have moved sooner for an amendment when it was impossible to know whom was liable.

For the aforementioned reasons, Plaintiffs seek this Court for leave to amend their pleadings to name the liable deputies and supervisors responsible for the death of Christian Madrigal.

## II. FACTUAL CONTEXT

On June 10, 2019, Fremont Police Officers arrested and briefly housed Christian at Fremont City Jail on charges that he was allegedly under the influence. (Doc. 1) While at Fremont City Jail, officers decided to take Christian to SRJ to complete his booking process. (Id.) Once Christian arrived at SRJ, Fremont Police Officers and Alameda County Sherriff's Deputies discussed Christian's mental health status. (Id.) Fremont Police and SRJ Deputies agreed that Christian would only stay at SRJ long enough to complete the booking process which was estimated to take no longer than just a few hours. (Id.) It was further agreed Christian would be released from custody after being booked, fingerprinted and photographed. (Id.)

Later that same day, Christian's parents came to Santa Rita to check on their son. (Id.)

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

1

They told SRJ Staff that Christian was in the midst of a mental health crisis and had recently been treated and released from a mental health hospital. (Id.) The parents begged SRJ Staff to get Christian the medical attention he so clearly needed and deserved. SRJ Staff reassured the parents that Christian's needs would be met and that he would be released shortly. (Id.) They instructed the parents to return home and wait for Christian to call.

Unbeknownst to Christian's parents, their son's time at SRJ had taken a turn for the worse as his mental crisis had rendered him unable to comply with simple commands. (Id.) In response, SRJ Deputies became frustrated with Christian and they placed him in an isolation cell. (Id.) Alameda County Sheriff's LT. CEDERGREN then ordered Deputies to chain Christian to the cell door. (Id.) The lower-ranking Deputies reminded LT. CEDERGREN that chaining a mentally-ill person to a cell door violated SRJ Departmental policy. (Id.) Nevertheless, LT. CEDERGREN told Deputies to disregard the policy. (Id.) Deputies relented and followed the Lieutenant's orders by chaining Christian to the door, thus leaving the young man unmonitored and chained to the door while in the midst of a mental health crisis. (Id.)

A short time later, SRJ Staff called Christian's parents and told them that something had happened to their son while he was in jail and that he had been transported to Eden Hospital for medical treatment. (Id.) The parents rushed to Eden. (Id.) When they arrived they discovered their son was on life support after having suffered injuries from supposedly trying to commit suicide by wrapping the chains the Deputies used to restrain him to the cell door around his neck. (Id.) The parents also learned their son had apparently been beaten while he was at SRJ, as doctors noted Christian had bruises all over his body and had suffered a bruised lung as well as a lacerated spleen and liver. (Id.) And tragically several days later, Christian succumbed to his injuries. (Id.) Defendant County later fired Defendant Cedergren for his misconduct related to the incident.

### III.     PROCEDURAL HISTORY

On December 23, 2019, Plaintiffs filed their operative Complaint against Defendant County and Defendant Cedergren. (Doc. 1). On January 29, 2020, Defendants filed a Rule 12 (b) (6) motion to dismiss against portions of Plaintiffs' claims. (Doc. 16). On February 26, 2020, the Court granted the motion in part and denied in part. (Doc. 20).

On April 1, 2020, Plaintiffs served their Rule 34 Requests for Production of Documents as an early request under Rule 26. (Declaration of Patrick Buelna, **Ex. 1** - Plaintiffs Rule 34 Requests' Set One; FRCP 26 (d)(2)).

On April 6, 2020, the parties held their Rule 26 (f) Conference and triggered the Rule 34 Requests for Production of Documents timing. (Buelna Decl. ¶ 2; FRCP 26 (d)(2)(B)).

On April 23, 2020, the Court held a scheduling conference and entered a scheduling order that set the Amended Pleadings Deadline for June 22, 2020. (Doc. 27).

On April 30, 2020, Defendants requested a two week extension to respond to Plaintiff's Rule 34 Requests from May 6, 2020 to May 20, 2020. (Buelna Decl., **Ex. 2** – Email Correspondences 4-30-2020). Plaintiff granted the extension. (Id.)

On May 19, 2020, Defendants requested an additional two days to May 22, 2020, and Plaintiff granted the extension again. (Id.)

On May 22, 2020, Defendants served their responses asserting privileges, promising non-privileged documents, but not disclosing any documents.

On May 27, 2020, Plaintiffs sent a meet and confer letter regarding the responses and lack of disclosures. (Buelna Decl., **Ex. 3** – Meet and Confer Letter 5-27-2020). Plaintiffs noted that Defendants failed to produce *any disclosures*, a privlege log, and that a Stipulated Protective Order

had been in place since March, 2020. (Doc. 22). Furthermore, Plaintiffs request a formal telephonic meet and confer in anticipation of a discovery dispute letter per this Court's procedures. (Id.)

On May 27, 2020, Defendants responded that they were still putting together disclosures and batestamping. (Buelna Decl., **Ex. 4** – Email Correspondence 5-27-2020).

On June 5, 2020, Plaintiffs checked back in with Defendants, because Defense counsel had indicated that Defendant would make disclosures the week of June 1, 2020 but had not. (Buelna Decl., **Ex. 5** – Email Correspondences 6-5-2020). However, that day, Friday, June 5, 2020, Plaintiffs received Defendants' Disclosures. (Id.)

Defendants' disclosures consisted of police reports, dispatch, and a single body worn camera from Lt. Cedergren that captured post-incident, when at least 12 other body-worn cameras existed based on the police reports and surveillance cameras. (Id.) Plaintiffs' counsel asked for the remaining files and Defendants' counsel responded that he was looking into it. (Id.) Plaintiffs' counsel that " at least 12 deputies referenced *in their reports* using their body cameras to record and uploading the evidence to a secure server." (Id.) Plaintiffs also pointed out photographs and surveillance cameras were missing. (Id.) On June 6, 2020, Defendants' counsel indicated he reached out to his client and hoped to have information for Plaintiffs on the owed discovery "next week sometime". (Id.)

On June 8, 2020, Plaintiffs sent Defendants their portion of a joint letter regarding Defendants' failure to provide complete disclosures responsive to Plaintiff Rule 34 Requests served in April, 2020. (Buelna Decl., **Ex. 6** – Joint Letter Draft 6-8-2020). Plaintiffs' again noted in the letter Defendants failure to make complete disclosures, failure to provide a privilege log, and their repeated failures to make good on their promises to make disclosures. (Id.)

In Plaintiffs' counsel's June 8, 2020 email, he requested that Defendants include their portions of the joint letter and make themselves available for a telephonic conference. (Buelna Decl., **Ex. 7** –

Email Correspondences 6-8-2020). On June 9, 2020, Defendants' counsel responded that he was preparing for a Ninth Circuit argument but reached out to his client. (Id.) Defendants' counsel represented he learned that the bulk of the evidence would be disclosed shortly. (Id.)

Plaintiffs' counsel responded that they were willing to wait until June 17, 2020 for the remaining disclosures. (Id.)

On June 15, 2020, the parties held a telephonic meet and confer in which Defendants' counsel indicated disclosures would be made the week of June 15, 2020 so Plaintiffs were willing to wait on filing the letter until June 19, 2020. (Id.)

On June 19, 2020, Plaintiffs still had not received disclosures and emailed Defendants counsel asking for documents or their portion of the joint letter. (Id.) Defendants' counsel responded: "Decisions, decisions. Hmm.", and indicated they would disclose remainings documents responsive to Plaintiff's Rule 34 Requests served in April, 2020 on June 22, 2020 the same the deadline for Amended Pleadings were due. (Id.)

On or about June 23, 2020, a day after the amended pleading deadline, Defendants disclosed the remaining body worn cameras, surveillance cameras and photographs, but *none of the trainings and/or policies* responsive to Plaintiffs' Rule 34 Requests. (Buelna Decl. ¶ 3)

In total the amount of body-worn camera and surveillance footage amounts to approximately 17 hours of footage. (Buelna Decl. ¶ 4)

On July 1, 2020, Plaintiffs' counsel sent another email to Defendants requesting the policies and training related to the incident. (**Ex. 6**).

On July 6, 2020, Defendants counsel indicated that they would disclose the relevant trainings and policies that same week. (Id.)

On or about July 10, 2020, Defendants disclosed the trainings and policies related to the incident, but, to date, have refused to disclose the Internal Affairs documents related to the incident. (Buelna Decl. ¶ 5)

After reviewing approximately 17 hours of video files, dispatch, incident reports and 300 pages of policies and trainings, on or about August 27, 2020, Plaintiffs identified the remaining Defendants that would be liable. Only after reviewing this video footage and these policies/trainings, were Plaintiffs able to identify the liable deputies in this case. (Buelna Decl. ¶ 6).

On August 27, 2020, Plaintiffs' counsel requested Defendants stipulate to grant Plaintiffs leave to name the remaining deputies despite the deadline passing. (Buelna Decl., **Ex. 7** – Email Correspondences 8-27-2020). Plaintiffs' pointed out good cause existed and diligence demonstrated due to the number of extensions and the amount of meet and confer efforts made, the disclosures made after the deadline, and respectfully requested the stipulation. (Id.)

On September 2, 2020, Defendants refused because of the number of Plaintiffs' named, and claimed the incident reports would allegedly have revealed their liability. (Id.)

Plaintiffs' note that without the surveillance camera, body worn cameras, trainings and policies that were all produced after the deadline, it was nearly impossible for Plaintiffs to evaluate the liability of the remaining deputies. (Buelna Decl. ¶ 7).

For the aforementioned reasons Plaintiffs filed this motion.

## IV.   LEGAL ANALYSIS

### A. GOOD CAUSE EXISTS TO AMEND THE SCHEDULE

All proposed amendments must be supported by good cause pursuant to Fed. R. Civ. P. 16(b) if the amendment requires any modification to the existing schedule. *See Johnson v. Mammoth*

*Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Rule 16(b)' s "good cause" standard primarily considers the diligence of the party seeking the amendment. *Id.* at 609.

  Here, Plaintiffs were zealously diligent in seeking the discovery they needed to evaluate and name the relevant liable Defendants. Plaintiffs' served early Rule 34 Requests, and shortly after scheduled a Rule 26 (f) Conference. Plaintiffs granted numerous extensions to Defendants to produce the relevant discovery. When Defendants failed to produce the discovery Plaintiffs made repeated and consistent meet and confer efforts, sought discovery dispute proceedings and did everything they could to compel disclosures from Defendants short of a motion. Therefore, Plaintiffs were extremely diligent in seeking the discovery they needed to name deputies.

  Courts have also permitted amendments to a scheduling order whenever there are "extenuating circumstances". *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group*, Inc., 116 F.R.D. 363, 365–66 (M.D.N.C.1987) ("Good cause" shown when there are "extenuating circumstances.").

  A reasonable discovery schedule may be enforced, even if relevant discovery is denied, unless extenuating circumstances compel a contrary finding. *Id.; see generally Otero v. Buslee*, 695 F.2d 1244 (10th Cir.1982) *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138 (D.Me.1985); Kleinfeld v. Tiffany Industries, Inc., 109 F.R.D. 333 (E.D.Mo.1985) (discovery extended 22 months, case 7 years old); Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1213 (3d Cir.1984) (2–month discovery for pro se plaintiff too short, normal period 4 months).

  In *Parkway*, the Court granted an amendment the schedule and plaintiff leave to take 3 depositions after the passing of the discovery deadline, because the court found extenuating circumstances where plaintiff had employed informal discovery methods and ultimately ran out of time – over the defendants' objections that the plaintiff had 6 months to take the depositions and

never did. *Parkway,* supra at 365. The plaintiffs even made the request after the close of all discovery. (Id.) As such, the court has granted amendments in situation much less than Plaintiffs and even after the close of discovery.

Here, Plaintiffs repeatedly attempted to seek the relevant discovery, drafted but did not file several discovery dispute letters (because Defendants would finally disclose the documents), and courteously granted discovery extensions to Defendants. In turn, Defendants disclosed the relevant documents after the deadline, then turned around and asserted Plaintiffs should have sought the amendment sooner. However, in a case where liability rises and falls on the internal procedures for checking on an inmate and watching video footage to evaluate the safety procedures and timing, it was nearly impossible to evaluate the liability of the deputies without thoroughly reviewing the disclosures first.

For all the aforementioned reasons, Plaintiffs respectfully request the Court grant Plaintiffs' Motion for Leave to file their First Amended Complaint to name the relevant deputies.

## B. THE AMENDMENT WOULD NOT BE FUTILE

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "This policy is to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation marks omitted). The grant or denial of an opportunity to amend is within the discretion of the district court. See *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of amendment" are grounds to deny a proposed amendment. Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir.2002) (emphasis added), quoting Foman, 371 U.S. at 182. An

amendment to a pleading is futile where the claim is barred by the applicable statute of limitations period. See Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir.2000).).

The Court weighs prejudice to the opposing party most heavily. *Eminence Capital, LLC v. Aspeon, Inc*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (emphasis in original).

Plaintiffs move for leave to amend their complaint in order to substitute Doe Defendants for Alameda Sheriff Deputy Salazar, Deputy Ross, Deputy Johnson, Deputy McMann, Deputy Rhoades, Deputy Sides, Sgt. Graham, Deputy Torres, Deputy Comfort, Lt. McComas, Deputy Ross as Defendants.

### 1. Prejudice

Defendant would not be prejudiced in any way by an amendment to name the deputy. Defendant County anticipated that its employees involved in the incident would be named. It is the very beginning of litigation with full opportunity for Defendant and the deputies to present their defenses and litigate the case. Notably, the close of Fact Discovery is in approximately 6 months on March 5, 2020.

### 2. Product of Undue Delay

As evidenced above, Plaintiffs have only missed the amendment deadline by two months, but no discovery has taken place except for written discovery. Furthermore, Plaintiffs adamantly pursued the discovery required to make this motion.

### 3. Proposed in Bad Faith

Plaintiffs propose their amendment in good faith in order to bring the deputies to justice and hold the proper person accountable for Plaintiffs' injuries.

### 4. Futile

Plaintiffs amendment to name the deputies would not be futile. Plaintiff brings forth causes of action under 42 U.S.C.A. § 1983 for violations of the Fourth and Fourteenth Amendment. Because 42 U.S.C.A. § 1983 does not have a statute of limitations, courts apply the statute of limitations for personal injury actions under state law to § 1983 claims. *See generally Butler v. National Community Renaissance of California*, 766 F.3d 1191 (9th Cir. 2014). California Civil Procedure 335.1 provides a party two years to file an action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another. Plaintiffs' federal and state causes of action in the complaint have a two year statute of limitations.

Here, the incident occurred on or about June 10, 2019, therefore less than two years have passed, and Plaintiffs claims against the deputies are well within the statute of limitations.

### V. CONCLUSION

For all of the aforementioned reasons, Plaintiffs move for leave to file a First Amended Complaint to name Deputy Salazar, Deputy Ross, Deputy Johnson, Deputy McMann, Deputy Rhoades, Deputy Sides, Sgt. Graham, Deputy Torres, Deputy Comfort, Lt. McComas, Deputy Ross as Defendants.

Date: September 14, 2020

Respectfully submitted,

**POINTER & BUELNA, LLP**
**LAWYERS FOR THE PEOPLE**

/s/ Patrick Buelna
PATRICK M. BUELNA
COUNSEL FOR PLAINTIFFS